IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| SHAHEEN CABBAGESTALK, #295567, | ) | Civil Action No. 3:12-3182-SB-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WARDEN LEROY CARTLEDGE; | ) | |
| CLASSIFICATION HEADPERSON OF | ) | |
| MCCORMICK PRISON; | ) | **REPORT AND RECOMMENDATION** |
| MAJOR F. MUSIER; | ) | |
| DHO MS. GLIDEWELL; AND | ) | |
| SGT. L. HENDERSON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The pro se Plaintiff, Shaheen Cabbagestalk, filed this action on November 13, 2012.[1] Plaintiff appears to allege constitutional claims pursuant to 42 U.S.C. § 1983 ("§ 1983"). At the time he filed this action, he was an inmate at the McCormick Correctional Institution of the South Carolina Department of Corrections ("SCDC"). He has since been transferred to the Lee Correctional Institution ("LCI") of SCDC. Plaintiff filed motions for preliminary injunctions on November 13 and May 16, 2013, and motions for summary judgment on January 22 and March 11, 2013. On April 22, 2013, Defendants filed a motion for summary judgment. Defendants are MCI Warden Leroy Cartledge, "Classification Headperson of McCormick Prison,"[2] Major F. Musier, Disciplinary Hearing Officer ("DHO") Alyson Glidewell ("Glidewell"), and Sergeant Lolita Henderson.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(e) DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

[2]Defendants assert that this Defendant lacks legal capacity and has not been served.

On April 22, 2013, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on April, 22, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in the dismissal of his complaint. Plaintiff filed a response on May 16, 2013, and Defendants filed a reply on May 29, 2013.

## MOTIONS FOR SUMMARY JUDGMENT

Plaintiff appears to allege that Defendants violated his due process rights when the disciplinary charge he received for Threatening to Inflict Harm was reduced to a charge of Disrespect, but was still treated as a major disciplinary infraction. Plaintiff claims he was discriminated against when he was placed in disciplinary segregation in the Special Management Unit ("SMU") after being found guilty of the disrespect charge. He claims that Defendants conspired with one another to place him in SMU in order to prevent any modification to his disciplinary classification. Plaintiff alleges he was cleared for MI 2[3] custody, but is being improperly held in MI 3 custody.

Myrisha Lee ("Lee"), the case manager over classifications at MCI, provides that Plaintiff's caseworker, Rachel Saltsburg, recommended that Plaintiff's classification level be changed from MI 3 to MI 2. At its October 2, 2012, committee review, the Institution Classification Committee agreed with the recommendation. On October 3, 2012, while his classification review was pending to be considered by State Classification, Plaintiff was charged with Threatening to Inflict Harm

---

[3] Defendants provide that MI 2 classification refers to "Custody Level Minimum In" (MI) and "Security Level" 2 (from a 1-3 range, with 1 being the least restrictive and 3 being the most restrictive). The Security Level takes into consideration several factors including, but not limited to, the severity of an inmate's current offense, sentence, prior criminal history, and disciplinary convictions. They further provide that Plaintiff is currently MI 3. ECF No. 35-1 at 5.

following an incident with Sgt. Henderson. Lee Aff., ECF No. 36-1, §§ 9-11. Disciplinary Hearing Officer ("DHO") Alyson Glidewell ("Glidewell") conducted a hearing at which Plaintiff, Warden Cartledge, and Major Mursier appeared; she lowered the charge to the lesser included charge of Disrespect; and she found Plaintiff guilty on the charge of Disrespect. Warden Cartledge concurred with DHO Glidewell's decision and approved her adjudged sanctions of ninety days of Disciplinary Detention ("DD"). Plaintiff had several months of DD time left from a previous conviction in July 2011 for Exhibitionism (for which he received 360 days of DD). He states that inmates serving DD at MCI are placed on lock-up and housed in the SMU. Warden Cartledge previously (on April 3, 2012) suspended Plaintiff's remaining time in SMU on the Exhibitionism disciplinary conviction, but after Plaintiff received another disciplinary conviction, his waived DD time was reinstated. Cartledge Aff., ¶¶ 6-9, 18.

Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to show he exhausted his available administrative remedies; (2) Plaintiff fails to establish the requisite facts to proceed under a federal conspiracy claim; (3) Plaintiff fails to establish a constitutional violation of his due process rights; and (4) Defendants are entitled to qualified immunity. In response, Plaintiff argues that Defendants are lying, disputes the disciplinary charge for which he was convicted, objects to the Roseboro order because he does not have an attorney, and appears to claim that he has inadequate "legal materials" (such as pens, a desk, and a locker to hold his legal materials) to adequately respond to Defendants' motion for summary judgment. In their

3

reply, Defendants provide that Plaintiff was provided envelopes, pieces of paper, and manila envelopes on several occasions in April and May 2013. ECF No. 44.[4]

Plaintiff, in his January 22, 2013 motion, argues that summary judgment should be granted in his favor because he has shown that Defendants should have let him off "lock-up." In support of this, he merely attached copies of his requests to SCDC staff members in which he requests that he be placed on MI 2 custody, requests removal from SMU, and challenges his disciplinary conviction. SCDC staff members responded that Plaintiff was placed on a lower level classification based on his disciplinary convictions which resulted in his receiving DD time, and that the Warden was the one to decide whether Plaintiff should be let off DD time early. As discussed below, Defendants are entitled to summary judgment as Plaintiff fails to show that he exhausted his available administrative remedies as to his claims and he fails to show that Defendants violated his constitutional rights. It is, therefore, recommended that Plaintiff's January 22, 2013 motion for summary judgment be denied. In his March 11, 2013 motion, Plaintiff argues that his motion for summary judgment should be granted because Defendants did not comply with scheduling order deadlines as they did not file a response to his motion for immediate emergency transfer (ECF No. 3) and his first motion for summary judgment (ECF No. 23) by February 10, 2013. Plaintiff filed these motions prior to Defendants being served with this action. Defendants timely filed their responses to Plaintiff's motions within thirty days from the date of the scheduling order, as directed in the scheduling order

---

[4]Review of this action reveals that Plaintiff was able to file numerous pleadings.

(ECF No. 25).[5] Thus, it is recommended that Plaintiff's March 11, 2013 motion for summary judgment be denied.

    1.    Standard of Review

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

---

[5]The scheduling order was dated February 8, 2013, and Defendants filed their response on March 11, 2013 (although the thirtieth day was March 10, 2013, that day was a Sunday, such that the period continued to run until the next day - see Fed. R. Civ. P. 6).

### 2. Administrative Remedies

Defendants contend that this action should be dismissed because Plaintiff failed to exhaust his available administrative remedies. Plaintiff has not responded to this argument.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. In his Complaint, Plaintiff did not answer the question of whether he filed a grievance at SCDC concerning these claims.

A prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. Exhaustion is a prerequisite to suit that must be completed prior to filing an action. See Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005); see also Neal v. Goord, 267 F.3d 116, 123 (2nd Cir. 2001) (holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."), overruled on other grounds by Porter v. Nussle, 534 U.S. 516, 532 (2002); Jackson v. Dist. of Columbia, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner may not exhaust administrative remedies during the pendency of the federal suit); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir.1999)(An

inmate incarcerated in a state prison must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983.); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

Plaintiff has not shown that he exhausted his administrative remedies as to his claims. In his Complaint, Plaintiff did not answer questions which asked if he filed a grievance concerning the matter and if he received a final disposition on the grievance. He instead states that there is no prison grievance procedure and states he notified his classification caseworker and his State Senator about his claims. Ann Hallman, Branch Chief of Inmate Grievances for SCDC, states the grievance branch received two Step 1 grievances concerning Plaintiff's claims on October 16, 2012 (ten days prior to Plaintiff signing his Complaint). She provides that SCDC officials received Plaintiff's disciplinary hearing appeal on November 1, 2012 (five days after Plaintiff filed this action). See Hallman Aff., ECF No. 36-3, ¶ 14-23.

3.     Due Process/Disciplinary Hearing

Plaintiff claims that he was denied fair due process at his October 25, 2012 disciplinary hearing because his charge of Threatening to Inflict Harm was lessened to the charge of Disrespect. Plaintiff claims he should have been afforded twenty-four hour notice of any changes to a disciplinary charge. Defendants contend that Glidewell's decision to lessen and reduce his charge is well within her duties as DHO as outlined in SCDC Policies and Procedures, and she was not required to give twenty-four hour notice because she reduced the original charge to a lesser-

included offense, as permitted by SCDC Policy and Procedure OP22.14, Section 9.6. Cartledge Aff., ¶¶ 15 and 16; Glidewell Aff., ¶ 8.

Plaintiff fails to show that his due process rights were violated as to his disciplinary hearing because he has not shown that he suffered the loss of good-time credits.[6] See Wolff v. McDonnell, 418 U.S. 539 (1974). Here, Plaintiff suffered only the loss of privileges and placement in disciplinary detention. See Plaintiff's October 25, 2012 Disciplinary Report and Hearing Record, ECF No. 35-2, at 3. The due process procedures required by Wolff and its progeny are not required unless the challenged discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995)(rejecting inmate's claim that either the Constitution or Hawaii statutes required due process for placement in disciplinary segregation). Further, Plaintiff's claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would

---

[6]Where a prison disciplinary hearing may result in the loss of good-time credit, Wolff holds that due process requires the following:
1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;
2. Providing the prisoner a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action;
3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;
4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and
5. Providing impartial fact finders.

Wolff, 418 U.S. at 563-576.

necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F.Supp. 357 (E.D.Va.1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck ).

    4.        Custody Classification

Plaintiff appears to allege that his constitutional rights were violated based on his custody classification. Defendants contend that Plaintiff's custody classification at MI 3 is based on his disciplinary convictions.

Plaintiff fails to show a constitutional violation concerning his custody placement. Generally, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate does not have a constitutional right to be confined in a particular location. See Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976). In Sandin v. Conner, the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. at 483. In Sandin, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485. Under the analysis set forth in Sandin, Plaintiff cannot show that he has a protected liberty interest in his security or custody classification. Id. at 483-85; see Backey v. South Carolina Dep't. of Corrs., 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996) [Table](allegations of wrongful placement in administrative segregation do not involve

the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); Reffritt v. Nixon, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), aff'd, 121 F.3d 699 (4th Cir. 1997).

Plaintiff may be attempting to assert that SCDC violated its own policies and procedures as to his custody classification. Allegations that Defendants did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

5.     Retaliation/Discrimination

Plaintiff appears to assert that he was placed in DD and SMU in retaliation for previous lawsuits he filed, and that Defendants' actions constituted discrimination. Defendants contend that Plaintiff fails to show he was placed in SMU in retaliation for previous lawsuits he may have filed. They assert that Plaintiff was placed in the SMU solely based on his disciplinary convictions (his 360 days of DD from his exhibitionism conviction in July 2011 and his October 2012 disrespect conviction). They also argue that Plaintiff fails to show that the decision to place him in SMU was an act of discrimination.

Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc)(citing Adams, 40 F.3d at 74). Plaintiff has provided only his own assertion that he was placed in SMU as a retaliatory measure. Defendants have provided credible evidence that Plaintiff was placed in SMU based on his disciplinary convictions, and Plaintiff has provided nothing to refute this.

Plaintiff also fails to show that Defendants' actions constituted discrimination as he has merely alleged conclusory allegations of discrimination. Although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated.").

6.  Conspiracy

Plaintiff alleges that Defendants conspired to kidnap him and force him to continue to be incarcerated at an MI 3 institution against his will. Defendants contend that Plaintiff's Complaint fails to establish the requisite facts to proceed under a federal conspiracy claim. They argue he fails to present evidence that could reasonably lead to the inference that Defendants positively or tacitly came to a mutual understanding to accomplish a common and unlawful plan.

Defendants also assert that there is a complete absence of any proof of any alleged conspiracy or that anyone conspired to torture, kidnap, or subject Plaintiff to cruel and unusual punishment. Lee states:

> To be eligible for the classification of MI 2, if an inmate has any "major disciplinary conviction within the past six (6) months" the review is conducted on a case by case basis. State Classification in Columbia reviewed the recommendations from the ICC on November 12, 2012 and denied the classification change for plaintiff Cabbagestalk from MI 3 to MI 2 because at the time of their review plaintiff was in lockup as a result of being found guilty of the "Disrespect" charge on October 25, 2012, just a few weeks prior. (See Exhibit C: SCDC Offender Management System State Classification Review).

ECF No. 36-1, ¶ 13.

To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. Id. To survive a summary judgment motion, a plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." Id. A plaintiff's allegation must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. Id. at 422. The plaintiff must show that the defendants possessed an intent to commit an unlawful objective. Id.

Here, Plaintiff has presented nothing other than his own speculation that there was a conspiracy. He fails to show a meeting of the minds amongst Defendants to deprive him of his constitutional rights. Further, he fails to show an underlying constitutional deprivation.

7.     Qualified Immunity

Defendants contend they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

**MOTIONS FOR EMERGENCY RELIEF/PRELIMINARY INJUNCTIONS**

On November 13, 2012, Plaintiff filed a motion for an immediate emergency transfer to a custody level 2 prison closer to Dillon, South Carolina. He claims that his custody level classification was lowered to MI 2 on October 2, 2012, but he was subjected to retaliation and remains at the MI

3 custody level. Defendants argue that this motion should be denied because Plaintiff was properly classified at MI 3 based on his disciplinary convictions, he does not have a constitutionally recognized liberty interest in a particular security classification or housing assignment, Plaintiff's claims that Defendants failed to follow SCDC policies and procedures do not constitute constitutional violations, and his claims concerning his disciplinary proceedings are barred by the doctrine of Heck v. Humphrey, 512 U.S 477 (1994).

On May 16, 2013, Plaintiff filed a motion for an emergency transfer, a court order of protection, and for placement in an "unviolent atmosphere" out of SCDC custody. He alleges that he is being tortured, cruelly punished, starved on lockdown for weeks, subjected to gang violence, and had his desk and locker taken away from him. He claims he should be separated from LCI Warden McCall. Defendants assert that a review of the SCDC Offender Management System Separation Requirements shows that Plaintiff has not established that he has any separation requirements, either from another inmate or from an SCDC employee (including Warden McCall). See ECF No. 43-1. They also argue that simply disliking the Warden or where one is incarcerated does not rise to the level of an emergency and does not require immediate transfer. Defendants argue that Plaintiff does not have a constitutional right to be housed at a particular institution and he fails to provide any proof that remaining at LCI would cause any irreparable harm.

Plaintiff's motions appear to be motions for preliminary injunctions. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary

relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Plaintiff fails to show that he is entitled to relief under the factors set out in Winter. He has presented nothing to show that he is likely to be successful on his underlying claims. As discussed above, Plaintiff fails to show that his constitutional rights have been violated by Defendants. Plaintiff does not have a protected constitutional right as to his custody classification. Defendants have presented evidence that Plaintiff's current custody classification is based on his disciplinary convictions. As to his first motion, his request for transfer from MCI is now moot. As to his second motion, Plaintiff appears to assert allegations concerning persons who are not defendants to this action. Additionally, to the extent Plaintiff seeks release from SCDC custody, such relief is not available in this § 1983 action a "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983 ." Heck, 512 U.S. at 481; see also Preiser v. Rodriguez, 411 U.S. 475, 487–88(1973) (attacking the length of duration of confinement is within the core of habeas corpus).

Although Plaintiff complains about conditions in SMU, he fails to provide anything other than his own speculation that he is likely to suffer irreparable harm in the absence of preliminary relief. Additionally, Plaintiff has presented nothing to show that the balance of equities tips in his behavior or that an injunction is in the public interest. Thus, it is recommended that Plaintiff's motions for emergency transfer/preliminary injunctions be denied.

**CONCLUSION**

Based on the foregoing, it is recommended that Plaintiff's motions for summary judgment (ECF Nos. 23 and 30) be denied; Plaintiff's motions for preliminary injunctions/immediate emergency transfer (ECF Nos. 3 and 41) be denied; and Defendants' motion for summary judgment (ECF No. 35) be granted.

Joseph R. McCrorey
United States Magistrate Judge

June 20, 2013
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).